| |
|---|
| **Mason v Pembroke NY LLC** |
| 2024 NY Slip Op 30018(U) |
| January 2, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 534783/2022 |
| Judge: Debra Silber |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS : PART 9**

——————————————————————————— X

**OMAR MASON,**

<table>
<tr><td></td><td>**Plaintiff,**</td><td>**DECISION/ORDER**</td></tr>
<tr><td>- against -</td><td></td><td></td></tr>
<tr><td></td><td></td><td>**Index No. 534783/2022**</td></tr>
<tr><td>**PEMBROKE NY LLC,**</td><td></td><td>**Motion Seq. No. 1 & 2**</td></tr>
<tr><td></td><td>**Defendant.**</td><td></td></tr>
</table>

——————————————————————————— X

*Recitation, as required by CPLR 2219(a), of the papers considered in the review of defendant's*
*motion for summary judgment and plaintiff's cross motion for summary judgment*

<table>
<tr><td>**Papers**</td><td>**NYSCEF Doc.**</td></tr>
<tr><td>Notice of Motion, Affirmation and Exhibits Annexed…………….……</td><td>13-23</td></tr>
<tr><td>Notice of Cross Motion Affirmations, Affidavits and Exhibits…………..</td><td>25-37</td></tr>
<tr><td>Affirmations and Affidavits in Opposition and Exhibits.........….....……</td><td>38</td></tr>
<tr><td>Reply Affirmations..............................................................................</td><td>39</td></tr>
</table>

**Upon the foregoing cited papers, the Decision/Order on these motions is as**

**follows:**

This is an action for breach of contract with regard to a two-family property located

at 31 Montauk Avenue, Brooklyn, NY (Block 3976 Lot 22). The complaint avers that a

contract of sale was executed by plaintiff (purchaser) on or about March 12, 2022, and then

wasn't signed by the seller until on or about June 9, 2022. Plaintiff is the proposed

purchaser, and defendant the seller. A copy of the contract is annexed to the complaint.

The sale price is $900,000, and a $31,500 deposit was paid, which is presumably still held

in escrow by the seller's attorneys, Vaysbaum & Kazakevich PC, as escrowee. The

mortgage contingency clause permits purchaser to finance up to $720,000. The closing

date is stated (Par 15) to be "60 days from receipt of executed contract by purchaser's

attorney" [P15], which would have been around mid-August of 2022. This action was

commenced on November 28, 2022.

[* 1]

The complaint alleges that the plaintiff could not obtain a mortgage commitment, and his attorney notified defendant's attorneys of his cancellation of the contract on or about November 7, 2022, but defendant's attorneys refused to return the downpayment. The first cause of action alleges that the defendant has breached the contract by refusing to return the down payment. The second cause of action asserts that the escrowee is in breach of the escrowee's obligations, however, the escrowee law firm is not a party defendant. The third cause of action seeks to "impress a vendee's lien against the property." The wherefore clause asks for a judgment cancelling the contract and ordering the return of the down payment with interest from November 7, 2022, and "impressing a lien against the property until plaintiff is paid."

Defendant answered the complaint and asserted counterclaims for breach of contract, negligence, and fraudulent inducement. The breach of contract claim asserts that plaintiff applied for a mortgage of $883,698, which was much more than the sum permitted in the contract, and thus he breached the contract. The negligence claim asserts that the seller (defendant) between April 2022 and October 2022, "performed costly repairs, improvements, construction, and renovations on the Property as a precondition of the sale of the Property by Defendant to Plaintiff." However, defendant claims that "Plaintiff failed to timely notify Defendant of the fact that Plaintiff applied for a mortgage loan in the amount, materially greater than the amount set forth in the Mortgage Contingency Clause. Additionally, Plaintiff failed to timely notify Defendant that his mortgage loan application was rescinded by the potential lender: Defendant was notified by Plaintiff of the subject rescission on or about per the letter submitted to Defendant's counsel, November 4, 2022, however the reason for denial was known to plaintiff as of August 8, 2022, per the recession [sic] letter" [Doc 3 ¶49]. The counterclaim continues "In the absence of the

[* 2]

agreement/arrangement between the parties, Defendant would not have performed said repairs, improvements, construction, and renovations on the Property. As a result, Defendant incurred financial damages. By reason of the foregoing, Defendant seeks indemnification and judgment for financial damages based upon Plaintiff's active negligence, carelessness, and recklessness, as set forth above, in the amount to be determined at trial." The fraudulent inducement counterclaim asserts that, among other things, "Plaintiff fraudulently induced Defendant into entering the Contract based on false representations that Plaintiff had sufficient funds when, in fact, the opposite was true. Had Plaintiff disclosed it financial conditions/standing, Defendant would not have entered into a contract and would not have performed costly and time-consuming construction work on the Property." Defendant's wherefore clause seeks a judgment dismissing the complaint and "granting defendant's counterclaims." Plaintiff replied to the counterclaims. The case is not as yet on the trial calendar.

The last recorded deed indicates that the defendant sold the property to someone else on April 19, 2023 for $950.000. Further, defendant had not taken title to the property until February 8, 2022, just weeks before the contract of sale at issue here was executed by plaintiff.

The first of the motions now before the court, motion sequence #1, filed by defendant, seeks summary judgment in defendant's favor, "declaring Plaintiff to be in default of the subject contract and declaring that Defendant is entitled to payment/retention of the contract downpayment in the amount of $31,500.00 as liquidated damages, (ii) dismissing Plaintiff's Complaint, (iii) awarding Defendant attorney's fees in the amount to be determined at the hearing on the amount to be awarded, (iv) pursuant to CPLR 603 severing Defendant's counterclaims for negligence and fraudulent inducement."

[* 3]

The cross motion (MS#2), filed by plaintiff, seeks an order granting plaintiff summary judgment "(1) to release the down payment of Plaintiff in the amount of THIRTY-ONE THOUSAND FIVE HUNDRED DOLLARS, ($31,500) (2) cancelling the contract of sale for real property between the parties, (3) impressing a lien against the premise until Plaintiff is paid the Down Payment together with costs.

In support of the defendant's motion, defendant provides an affirmation of counsel, an affidavit from the managing member of defendant, Erik Moseyev, a copy of seller's deed, the contract of sale, a document described as "Doc 19, time of an essences letter" which is completely unreadable, a letter dated 11/14/22 from plaintiff's current attorney to defendant's attorneys [Doc 20], which rejects the time of the essence letter, and avers that defendant breached the contract and should return the down payment, the 11/4/22 letter [Doc 21] to plaintiff that his mortgage application was denied, and the pleadings.

Mr. Moseyev states in his affidavit that the time is of the essence letter scheduled the closing for 11/15/22, that it was rejected by plaintiff's attorney, that the letter denying plaintiff's mortgage application indicates in the attachment that he had applied for a mortgage of $883,698, and that the mortgage contingency clause only permitted plaintiff to apply for up to $720,000. He claims that the plaintiff's failure to apply for a mortgage permitted by the contract was a willful default under the contract which entitles the seller to keep the down payment as and for his liquidated damages. He also notes that the contract provides for attorneys' fees to the prevailing party should there be a dispute. Finally, he says that "Defendant extended substantial amounts of money towards improvement of the Property, per Plaintiff's directions. Plaintiff failed to timely notify Defendant that his mortgage loan application was rescinded" [Doc 16 ¶13]. He continues "In the absence of the agreement/arrangement between the parties, Defendant would not have performed

[* 4]

said repairs, improvements, construction and renovations on the Property" [*id.* ¶15]. Defendant's attorney provides an affirmation which cites numerous cases in support of defendant's claim that the plaintiff breached the contract.

Paragraph 28 of "Purchaser's Rider" at Page 30 of Doc 1 states in its entirety that "Seller shall, at Seller's expense, renovate and rebuild the Premises, including installation of the systems and appliances reference in Par. 2 of the Contract, at no less a standard than what would commonly be referred to as "high-end" appliances. Seller shall, prior to any construction, consult with and receive instruction from, and written approval from, Purchaser."

Counsel for defendant does not provide any additional evidence. It is not known why the seller was going to renovate and rebuild the premises, or how long that took, or who asked for more time to close, seller or buyer. There is no explanation offered for seller's delay in signing the contract for three months after plaintiff signed it. The only thing that is provided is the contract, signed by plaintiff in March of 2022, and the letter from purchaser's attorney dated in November of 2022, notifying defendant's attorney that the plaintiff's mortgage application had been denied and he elected to cancel the contract. The "Statement of Credit Denial, Termination, or Change" is dated 11/3/22 and states that plaintiff applied for a loan of $883,698, and that his application was denied because he had "insufficient funds to close."

In support of plaintiff's cross-motion, plaintiff provides an affirmation of counsel, an affidavit from plaintiff, Exhibits A to J, which plaintiff's counsel couldn't bother to properly label, and a reply affirmation. Defendant only submitted an affirmation in opposition, with no further exhibits. Exhibit A is yet another copy of the contract of sale. Exhibit B is a readable copy of the Time is of the Essence Letter dated October 13, 2022. It was sent to

[* 5]

plaintiff's transaction attorney, not his attorney in this litigation, and states that the contract of sale is dated June 9, 2022, and the closing was supposed to be on or about August 9, 2022. The court again notes that plaintiff signed the contract on March 12, 2022, but it is not clear why defendant delayed in counter-signing it. Exhibit C is the email dated 11/7/22 from plaintiff's prior attorney to defendant's attorney which transmitted the letter dated 11/4/22 denying plaintiff's mortgage application. Exhibit D is an email from plaintiff's prior attorney to defendant's attorney rejecting the time is of the essence letter. Exhibit E is another copy of the mortgage denial. Exhibit F is the letter from plaintiff's current attorney to defendant's attorney dated November 14, notifying her that he has been retained and also rejecting the time is of the essence letter. Exhibit G is the summons and complaint. Exhibit H is plaintiff's reply to defendant's counterclaims, as is Exhibit I. Exhibit J is a printout from a website, from something called an "FHA Handbook." It explains that a borrower under the FHA program is permitted to apply for a mortgage of up to 96.5% of the purchase price.

Plaintiff's affidavit [Doc 27] states that the rider to the contract permitted him to apply for "an FHA or other government insured mortgage" and that he had applied for an FHA loan of 96.5% of the purchase price, which is one of the FHA products, and that by permitting him to apply for an FHA loan, defendant permitted him to apply for a mortgage of $883,698, which was "perfect fully permissible under the contract." Plaintiff's counsel provides the same opinion in his affirmation in support. He avers that plaintiff's cancellation of the contract was in full compliance with the terms of the contract. He does not provide any case law in support of his claim that the Rider which permitted plaintiff to apply for an FHA mortgage meant that plaintiff was not limited to the cap on the financed amount in the mortgage contingency clause. He states, "practitioners of real estate law all know that FHA

[* 6]

loan are never for 80% of the purchase price." He also argues that since the contract had an attorneys' fees clause, that plaintiff is entitled to the return of his down payment and attorneys' fees.

### *Discussion*

In a real estate transaction such as this, the sending of the signed contract by the buyer, along with the down payment check, is considered under NY law to be an offer. The offer must be accepted by the signing of the contract by the seller. Here, the seller signed and returned the contract on or about June 9, 2022, accepting the plaintiff's offer and forming a binding contract.

The mortgage contingency clause, at paragraph 8 of the form contract, states, in pertinent part, as follows:

> "The obligations of Purchaser hereunder are conditioned upon issuance, on or before 30 days from date purchaser's attorney receives a fully executed contracts of sale (the "Commitment Date"), of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to purchaser, at Purchaser's sole cost and expense, of $720,000.00 or such lesser sum as Purchaser shall be willing to accept, at the prevailing rate of interest . . . . for a term of at least 15/30 years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. . . . If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser or Seller may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed canceled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that Downpayment promptly refunded to Purchaser and except as set forth in Paragraph 27 [regarding the broker]. If Purchaser fails to give notice of cancellation or if the Purchaser shall accept a commitment that does not comply with the terms set forth above, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph." [emphasis added].

[* 7]

Paragraph R3 of the "Purchaser's Rider" states in its entirety "Paragraph 8 of the Contract is modified to permit an FHA or other government insured mortgage."

The "commitment date" under this contract, pursuant to its terms, was 30 days after the seller's attorney sent the signed contract back to the purchaser's attorney, which was on or about July 9, 2022, or the next business day if it fell on a weekend. There is nothing in the record to indicate that the plaintiff cancelled the contract pursuant to its terms. The earliest communication provided from plaintiff's attorney to defendant's attorney was in November of 2022. Therefore, the purchaser waived his right to cancel the contract. The attempt in the Purchaser's Rider to include a savings clause is unavailing, the court notes. It states, at paragraph R2, that "Notwithstanding anything in the Contract or Riders to the contrary, if, through no fault of Purchasers, the Institutional Lender either denies Purchasers' loan application or, having issued a Commitment Letter, rescinds said commitment to loan, Purchasers shall be entitled, on written notice to Seller along with Lender's written denial or recission, to cancel the Contract and receive a refund of the Contract Deposit." [emphasis added]. Here, the requirement that the denial or rescission be "through no fault of purchaser" prevents the court from considering that this clause somehow supersedes paragraph 8 of the form contract.

It is black letter law in the Second Department that a purchaser who applies for a mortgage for a far greater amount than the amount set forth in the contract does not have grounds to cancel the contract (*NY Ctr. for Esthetic & Laser Dentistry v VSLP United LLC*, 159 AD3d 567 [1st Dept 2018], citing *Post v Mengoni*, 198 AD2d 487 [2d Dept 1993]; *Silva v Celella*, 153 AD2d 847 [2d Dept 1989]). Further, plaintiff here never made a good faith effort to obtain the permitted financing, as he never sought a loan in the amount

[* 8]

contemplated in the contract. Thus, by applying for a mortgage in an amount significantly greater than that stated in the contract, the buyer breached the contract, as a matter of law (*Kweku v Thomas*, 144 AD3d 1109, 1111 [2d Dept 2016] citing *HSM Real Estate, Inc. v Dragon*, 94 AD3d 702, 941 NYS2d 512 [2d Dept 2012]; *Humbert v Allen*, 89 AD3d 804, 807, 932 NYS2d 155 [2d Dept 2011]).

There is nothing in the record which indicates that plaintiff was granted an extension of time in which to obtain financing, nor is there anything which indicates that the provision in the purchaser's rider which removed the form contract's bar on applying for an FHA mortgage somehow changed the amount specified in the contract that the purchaser was limited to financing.

Accordingly, the court finds that the plaintiff purchaser breached the contract by failing to comply with the terms of the mortgage contingency clause, as modified by the rider. Moreover, pursuant to the express terms of the mortgage contingency clause, plaintiff waived his right to cancel the contract and to receive a refund of the down payment, because he also failed to give the seller notice of cancellation of the contract within five business days after the commitment date, on or about July 9, 2022.

The contract further specifies that, where, as here, there is a default by the buyer, the seller is entitled to retain the down payment as liquidated damages. The rider also provides that the prevailing party is entitled to attorneys' fees. Defendant is therefore also entitled to reasonable attorneys' fees incurred in connection with this litigation. Generally, "[a]n attorney's fee is merely an incident of litigation and is not recoverable absent a specific contractual provision or statutory authority" *(Levine v Infidelity, Inc., 2* AD3d 691, 692 [2d Dept 2003]). Here, paragraph R19 of the "purchaser's rider" to the subject contract of sale states, "Notwithstanding anything to the contrary contained herein this Contract, if

[* 9]

at any time either Seller or Purchaser shall institute any action or proceeding against the other relating to the provisions of this Contract or any default hereunder, then the unsuccessful party in such action or proceeding agrees to reimburse the successful party for the reasonable expenses for attorneys' fees, paralegal fees and disbursements incurred therein by the successful party. Such reimbursement shall include all legal expenses incurred prior to trial, at trial and at all levels of appeal and post-judgment proceedings. This Paragraph shall survive the Closing or termination of this Contract."

Inasmuch as the court has awarded defendant seller summary judgment dismissing plaintiffs' complaint and summary judgment on its counterclaim for breach of contract and a declaratory judgment against plaintiff, defendant may recover reasonable attorney's fees incurred in defending against the within action pursuant to the express terms of the subject contract.

For these reasons, the defendant's motion (MS#1) for summary judgment dismissing the complaint, and for summary judgment in its favor on the counterclaim for breach of contract and a declaratory judgment and attorneys' fees against plaintiff is granted. However, the branch of the motion which seeks to sever the counterclaims for negligence and fraudulent inducement is denied, and those claims are dismissed. When both parties have moved for summary judgment, the court is permitted to search the record and address those claims not included in the motion. The retention of the deposit is provided for in the contract as seller's liquidated damages. This means the amount of damages the seller would be entitled to if plaintiff breached could not be ascertained, so it was agreed that if plaintiff breached the contract, retention of the down payment, plus attorneys' fees if the matter went to court, would be its damages. Additional damages for fixing up the property, which clearly enabled the defendant to sell it almost immediately

after plaintiff's breach, and for a higher price than plaintiff had agreed to pay, are not permitted in addition to defendant's liquidated damages.

### Conclusions of Law

Accordingly,

It is hereby **ORDERED, ADJUDGED AND DECLARED** that defendant is entitled to summary judgment on its first counterclaim for breach of contract. The plaintiff breached the subject contract and defendant is entitled to payment/retention of the contract downpayment in the amount of $31,500.00 as liquidated damages, and the contract of sale is declared to be null and void and of no further force or effect; and it is further

**ORDERED** that Vaysbaum & Kazakevich PC., as escrowee shall disburse the funds held in escrow of $31,500 to defendant promptly; and it is further

**ORDERED** that plaintiff's complaint is dismissed; and it is further

**ORDERED** that defendant is entitled to an award of attorney's fees and costs; and it is further

**ORDERED** that unless there is filed a stipulation of settlement between the parties as is permitted by CPLR 4317, this matter is referred to a Special Referee pursuant to a Referee Referral Order issued simultaneously herewith, to hear and determine the defendant's claim for attorneys' fees. Defendant's attorney is to provide the Special Referee with copies of her firm's billing and time records, together with a summary and breakdown of the categories of legal services provided, and the hours attributed to each category of services; and it is further

**ORDERED** that counsel for the defendant shall, within 30 days from the date of this order, serve a copy of this order with notice of entry, together with a completed Information Sheet, upon the Special Referee Clerk in the General Clerk's Office (Room 482), who is

[* 11]

directed to place this matter on the calendar of the Special Referee's Part (Part 82) for the earliest convenient date; and it is further

**ORDERED** that failure to comply with the immediately preceding paragraph will result in the dismissal of the defendant's claim in its answer with counterclaims, for attorneys' fees, unless good cause is shown; and it is further

**ORDERED** that other than the defendant's claim for attorneys' fees and costs, the defendant's counterclaims, for negligence and fraudulent inducement, are dismissed; and it is further

**ORDERED** that plaintiff's motion (MS #2) for summary judgment declaring that the contract is cancelled, and that he is entitled to the return of the down payment and a common law vendee's lien against the property must be denied in light of the above determinations.

This constitutes the decision and order of the court.

Dated: January 2, 2024

**E N T E R :**

**Hon. Debra Silber, J.S.C.**